RECORD NO. 09-4806

In The

# United States Court Of Appeals

For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## JOHN DOUGLAS BIRD, JR.,

*Defendant – Appellant.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### AT BRYSON CITY

———————

### REPLY BRIEF OF APPELLANT

———————

Claire J. Rauscher
Executive Director
FEDERAL DEFENDERS OF
  WESTERN NORTH CAROLINA, INC.

Ann L. Hester
*Counsel of Record*
Angela Parrot
Fredilyn Sison
Assistant Federal Defenders
129 West Trade Street
Suite 300
Charlotte, North Carolina  28802
(704) 374-0720

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    The Government Ignores Uncontradicted Evidence That Bird
        Was Suffering from Alcohol Withdrawal When He Signed A
        *Miranda* Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.   Under the Totality of the Circumstances, Bird's Miranda
        Waiver Was Not Knowing, Voluntary and Intelligent. . . . . . . . . . . 4

    III.  The *Miranda* Waiver from the Day Preceding the Polygraph
        Examination Could Not Be Effective in Light of Investigators'
        Subsequent Improper Actions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    IV.  The Polygraph Waiver of Rights Did Not Extend to
        Questioning Beyond the Scope of the Polygraph Procedure. . . . . . 9

    V.   The Offense of Attempted Murder Requires No Proof Beyond
        That Required for Conviction of Assault with Intent to Murder. . . 11

    VI.  Bird's Multiple Convictions for the Same Offense Violate
        Double Jeopardy, are Plain Error, and Should Be Vacated. . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s):**</u>

<u>**Cases**</u>:

*Ball v. United States*,
   470 U.S. 856 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Billups v. State*,
   762 A.2d 609 (Md. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blockburger v. United States*,
   284 U.S. 299 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14, 16

*Brown v. Ohio*,
   432 U.S. 161 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Guam v. Dela Pena*,
   72 F.3d 767 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Krochalis v. Insurance Co. of North America*,
   629 F. Supp. 1360 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mueller v. Angelone*,
   181 F.3d 557 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rutledge v. United States*,
   517 U.S. 292 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*United States v. Anaverde*,
   64 F.3d 1305 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Anthony*,
   474 F.2d 770 (5th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Atkinson*,
   297 U.S. 157 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Cardwell*,
433 F.3d 378 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Chestaro*,
197 F.3d 600 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Cristobal*,
293 F.3d 134 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Dupree*,
544 F.2d 1050 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Fallen*,
256 F.3d 1082 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*United States v. Gillyard*,
726 F.2d 1426 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Jarvis*,
7 F.3d 404 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*United States v. Johnson*,
400 F.3d 187 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Loera*,
923 F.2d 725 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Midgett*,
488 F.3d 288 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Morris*,
287 F.3d 985 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Olano*,
507 U.S. 725 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*United States v. Weekley,*
    130 F.3d 747 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wyrick v. Fields*,
    459 U.S. 42 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

## <u>INTRODUCTION</u>

The government claims that Bird's chief complaint is that he had an upset stomach when he signed a *Miranda* waiver. That claim is incorrect. It ignores uncontradicted evidence that Bird was in alcohol withdrawal and was vomiting repeatedly as a result. The government offers no legal basis for excluding this evidence from the Court's *de novo* review, and none exists.

Evidence of Bird's alcohol withdrawal is particularly relevant because the police used Bird's alcohol withdrawal as leverage to obtain his *Miranda* waiver and consent to the polygraph. They also obtained his waiver and subsequent confession without informing him that his condition could affect the outcome of the polygraph test. Then, after telling him that he had failed the test, they continued questioning him, even though his *Miranda* waiver was limited to interviews in connection with the polygraph test itself and did not extend to post-polygraph interviews.

The government also contends that Bird's *Miranda* waiver from the day preceding the polygraph examination was still effective after the polygraph examination took place, but the officers' misconduct in connection with obtaining Bird's waiver in connection with the polygraph test rendered Bird's prior *Miranda* waiver ineffective.

Finally, the government's argument that proof of an assault with intent to murder does not necessarily prove every element of attempted murder is unsupported by law. Because of the requirement that any non-touching assault be accompanied by an apparent *present* ability to cause *immediate* bodily harm, every assault with intent to murder will necessarily constitute attempted murder. Bird's conviction and punishment for both offenses violates the Double Jeopardy Clause and is plain error. A plain, constitutional error seriously affects the fairness, integrity, and public reputation of judicial proceedings, and this Court should notice the error.

## ARGUMENT

**I.   The Government Ignores Uncontradicted Evidence That Bird Was Suffering from Alcohol Withdrawal When He Signed A *Miranda* Waiver.**

The government incorrectly characterizes Bird's argument as a complaint about "an upset stomach," G. Br. at 11. To support that characterization, it observes that Bird did not request medical treatment and "a reliable diagnosis [of alcohol withdrawal] was never made." G. Br. at 13. But there is no requirement that a Bird's alcohol withdrawal be diagnosed by a medical professional before it can be considered part of the totality of the circumstances present at the time he signed the *Miranda* waivers, and there was no evidence that Bird's vomiting was attributable to any cause other than alcohol withdrawal. Thus, even when viewed

2

in the light most favorable to the government, *see United States v. Cardwell*, 433 F.3d 378, 388 (4th Cir. 2005), the evidence established that Bird was vomiting because of alcohol withdrawal and not for some other reason.

Detective Owl testified that when he first interviewed Bird on January 9 at the Cherokee Police Department, Bird began vomiting during the interview and told Owl that his stomach was "messed up" and had been for a couple of years. JA 51. Bird told Owl that "he has to drink a couple of beers *every morning* to make his stomach feel better—make him feel better." *Id.* (emphasis added). The next day, when Owl came to pick Bird up for the polygraph examination, Bird vomited all over the floor in the detention center. JA 60. Owl knew Bird was an alcoholic; Owl told Agent Smith that he thought Bird was vomiting because of alcohol withdrawal. JA 36.

Agent Smith, the polygrapher, also knew that Bird's vomiting was due to alcohol withdrawal. He testified that Bird vomited in the car on the way to the polygraph exam, that he threw up before the interview, and that he threw up again after the interview. JA 31, 35. And the officers who transported Bird—including Detective Owl—told Smith that they thought Bird was vomiting because of alcohol withdrawal. JA 36. Even in the light most favorable to the government, the only reasonable inference to be drawn from the evidence is that—as all of the officers understood—Bird was vomiting because of alcohol withdrawal.

3

Of course, the officers could have conclusively confirmed their lay diagnoses of alcohol withdrawal by having a medical professional attend to Bird. But, instead, they interrogated him. That hardly means that this Court should ignore the uncontroverted evidence that Bird was vomiting because of alcohol withdrawal when he signed the *Miranda* waiver.

## II.    Under the Totality of the Circumstances, Bird's Miranda Waiver Was Not Knowing, Voluntary and Intelligent.

A.    The government incorrectly asserts that "[t]he issue is not whether or not the polygraph results were accurate and reliable—it is whether or not the confession obtained thereafter was voluntary." G. Br. at 15. The government also posits that "[t]he mere presence of physical discomfort, in this case nausea, standing alone does not render an otherwise voluntary statement inadmissible, particularly when the police made no effort to leverage that discomfort to coerce a confession." G. Br. at 21.

But, as discussed above, the officers correctly understood that Bird was suffering from alcohol withdrawal, not "nausea, standing alone." And Bird does not argue that his confession was coerced; rather, his *Miranda* waiver was not effective because of the combination of his alcohol withdrawal and law enforcement's coercive use of that withdrawal to its advantage in obtaining Bird's waiver in connection with the polygraph examination. Law enforcement

4

agents *did* "leverage" Bird's alcohol withdrawal to coerce him to waive his *Miranda* rights and to agree to take a polygraph examination that could serve no purpose other than providing further leverage to elicit incriminating statements upon Bird's failure to pass the test.

B.    The government cites *United States v. Cristobal*, 293 F.3d 134 (4th Cir. 2002), and *United States v. Morris*, 287 F.3d 985, 989 (10th Cir. 2002), arguing that *Miranda* waivers in those cases were upheld "under far more trying physical circumstances."  G. Br. at 13.  Those cases are inapposite, however, because the investigators in those cases were not obtaining *Miranda* waivers in connection with polygraph examinations of suspects whose physical condition could affect the outcome of the tests.

In *Cristobal*, a law enforcement officer obtained a *Miranda* waiver from Cristobal when he was hospitalized with gunshot wounds, after consulting with the nurse on duty, who told him that Cristobal was "oriented."  293 F.3d at 138.  But the law enforcement officer merely interviewed Cristobal; Cristobal did not undergo a polygraph examination while he was hospitalized, nor did the officer attempt to use the results of a polygraph test taken under those circumstances in questioning Cristobal.  *Id.*

Like *Cristobal*, in *Morris* officers obtained a *Miranda* waiver from Morris while he was hospitalized and on painkillers after having been shot in the back by

5

an FBI agent. 287 F.3d at 987. There was no "government coercion, either intentional or unintentional," because FBI agents had declined to talk to him for ten days after he was shot, instead telling him to focus on recovering before speaking to them. *Id.* at 989. They also consulted with his physician before talking to him to make sure that the medication he was taking "would not affect his mental faculties." *Id.* Most importantly, they obtained the *Miranda* waiver merely for the purpose of interviewing Morris, not for the purpose of having him take a polygraph examination when he was hospitalized and taking pain medication and using the results of that examination for further interrogation.

The totality of the circumstances here are quite different from those present in *Cristobal* and *Morris*. Unlike the officers in both of those cases, here the investigating officers did not seek any medical advice about the effects of Bird's obvious medical condition. Instead, they obtained his consent to a polygraph examination and his *Miranda* waiver in connection with it, knowing he was vomiting from alcohol withdrawal and likely would take the polygraph test because he thought that if he passed it, he could get out of jail and drink again—especially since Owl left that possibility open when Bird asked about it. *See* JA 53. Furthermore, Smith administered the polygraph test while Bird was in alcohol withdrawal, a condition that Smith should have known would render the results unreliable, without informing Bird that his condition could affect the

6

results.  Under the totality of the circumstances, the officers' actions in obtaining

Bird's *Miranda* waiver and consent to the polygraph examination were coercive

and rendered his *Miranda* waiver involuntary.

### III.   The *Miranda* Waiver from the Day Preceding the Polygraph Examination Could Not Be Effective in Light of Investigators' Subsequent Improper Actions.

The government argues that, even if the *Miranda* waiver Bird signed before

taking the polygraph test were limited to the polygraph examination itself, "the

*Miranda* waiver given on the previous day would suffice as there is no

requirement that his rights be refreshed every time he speaks to the police."  G. Br.

at 17-18.  None of the authority cited by the Government, however, supports its

argument that Bird's *Miranda* waiver was voluntary, knowing, and intelligent in

this situation, where law enforcement officers employed coercive tactics following

an initial *Miranda* waiver in order to obtain Bird's second *Miranda* waiver and

consent to a polygraph examination.

In fact, *Wyrick v. Fields*, cited by the government, supports a conclusion

that Bird's initial waiver was no longer effective by the time he made

incriminating statements.  459 U.S. 42 (1982).  In *Wyrick*, the Supreme Court

rejected a *per se* rule adopted by the Eighth Circuit that required a *Miranda*

warning to be given before questioning a suspect at the conclusion of a polygraph

examination.  *Id.* at 48.  But in reaching this holding, the Court suggested that a

once-valid *Miranda* waiver could subsequently become ineffective if "the circumstances changed so seriously that his answers no longer were voluntary," or if "he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." *Id.* at 47; *see also Mueller v. Angelone*, 181 F.3d 557, 575 (4th Cir. 1999) (*Miranda* waiver that was initially valid can be subsequently rendered ineffective if, under the totality of the circumstances, police conduct made continuing waiver no longer voluntary, knowing, and intelligent). That is exactly what happened between Bird's first *Miranda* waiver at the Cherokee Police Department with Detective Owl and his second, ineffective waiver at the SBI office before he was given a polygraph test. Bird's alcohol withdrawal, combined with the investigators' leveraging of that withdrawal to persuade Bird to waive his *Miranda* rights in connection with a polygraph test and their failure to inform Bird that the results of the polygraph test could be affected by his alcohol withdrawal, made Bird's *Miranda* waiver from the previous day ineffective.

The other cases cited by the government do not address intervening, improper behavior by law enforcement officers. *See  United States v. Weekley*, 130 F.3d 747, 750 (6th Cir. 1997) (during one hour period between *Miranda* warning and interview, officers reminded Weekley twice of his *Miranda* rights, and nothing occurred between the reading of the rights and his confession which

8

could have affected his understanding of his rights); *Guam v. Dela Pena*, 72 F.3d

767, 769-70 (9th Cir. 1995) (rewarning not required when defendant pointed to

nothing other than the passage of fifteen hours "to suggest the effectiveness of the

earlier *Miranda* warnings was diminished); *United States v. Anaverde*, 64 F.3d

1305, 1310 (9th Cir. 1995) ("[t]here is no rigid rule relating to the passage of time

or a break in events"; court holding that "under the circumstances here,"—which

did not involve any coercion by police—lapse of one day between *Miranda*

warning and statement "was not unreasonable" ); *United States v. Anthony*, 474

F.2d 770,773 (5th Cir. 1973) (defendant initiated further conversation with

investigator after asserting his rights following *Miranda* warnings).

Because the circumstances—including law enforcement's improper

tactics—significantly changed between Bird's first *Miranda* waiver and his second

waiver and agreement to take a polygraph examination, the first waiver became

ineffective before Bird made any incriminating statements.

## IV.  The Polygraph Waiver of Rights Did Not Extend to Questioning Beyond the Scope of the Polygraph Procedure.

According to the government, the *Miranda* waiver that Bird signed before

the polygraph examination was not limited to the polygraph examination itself,

because the "Polygraph Adult Advice of Rights" form references "both 'interviews

and the polygraph examination.'"  G. Br. at 18.  The government ignores,

9

however, the language in the document stating that Bird requested "that the *North Carolina State Bureau of Investigation* interview me and conduct a polygraph examination of me concerning events I will discuss *with the examiner* participating in the interviews and polygraph examination." JA 80c. This language limits the scope of the waiver to discussions between Bird and Smith, the polygraph examiner, who also was the only SBI agent interviewing Bird.

Furthermore, Smith's testimony at the suppression hearing clarified what "interviews" were part of the polygraph examination. He explained that the interviews were part of the pre-polygraph procedure, where the examiner obtained personal information about the subject of the test. JA 27. He also testified that Bird did not confess to the shooting until after the polygraph test was complete and he had informed Bird that he had not passed the test. JA 28.

While the meaning of "interviews" in the Polygraph Advice of Rights form is admittedly ambiguous, any ambiguity must be interpreted against the government. *United States v. Johnson*, 400 F.3d 187, 197 (4th Cir. 2005). "'No discernable public interest is served by interpreting a purportedly ambiguous waiver of rights provision in favor of the party who, either intentionally or unintentionally, inserted the ambiguity in the provision in the first place.'" *Id.* at 196 (quoting *Billups v. State*, 762 A.2d 609, 615-16 (Md. App. 2000)).

When a *Miranda* waiver is limited to questioning in connection with a polygraph examination, the limitations on that waiver must be considered in determining whether, under the totality of the circumstances, the defendant's *Miranda* waiver was effective with respect to questioning that is not part of a the polygraph examination. *United States v. Gillyard*, 726 F.2d 1426, 1429 (9th Cir. 1984) (citing *Wyrick*, 459 U.S. 42). Considered in connection with the other circumstances at play when Bird signed the waiver and took the polygraph test, the limited scope of the waiver is another circumstance demonstrating that Bird's *Miranda* waiver was not effective with respect to the incriminating statements he made to Smith and to Detective Owl.

## V.    The Offense of Attempted Murder Requires No Proof Beyond That Required for Conviction of Assault with Intent to Murder.

Without citing any authority, the government contends that the elements of attempted murder and assault with intent to commit murder are not the same, because a defendant could commit acts that amount to a "substantial step" without committing an assault, and a defendant could also commit an assault in a manner that may not constitute a "substantial step." G. Br. 23-24. By way of example, the government contends that a person could commit an assault by means of a "telephonic threat," and that this would not reach the level of a "substantial step." G. Br. 24. But contrary to the government's assertion, a

11

telephonic threat could not satisfy the elements of the offense of assault with intent to commit murder.

Bird does not contend that every act constituting a "substantial step" amounts to an assault. But a conviction for both offenses arising from the same acts still violates double jeopardy, because as Bird argued in his Opening Brief, when one offense "necessarily" includes proof of the other, double jeopardy bars multiple prosecutions and punishment. *Rutledge v. United States*, 517 U.S. 292, 297 n.6 (1996) (citing *Ball v. United States*, 470 U.S. 856, 861-64 (1985)). And proof of assault with intent to murder "necessarily" includes proof of attempted murder.

The only difference in the elements of attempted murder and assault with intent to commit murder is that, while attempted murder requires a "substantial step" towards committing a murder, assault with intent to murder requires either a willful attempt to inflict injury upon another person or "'a threat to inflict injury upon the person of another *which, when coupled with an apparent present ability*, causes a reasonable apprehension of *immediate bodily harm*.'" *United States v. Loera*, 923 F.2d 725, 728 (9th Cir. 1991) (emphasis added) (quoting *United States v. Dupree*, 544 F.2d 1050 (9th Cir. 1976)); *see also United States v. Fallen*, 256

12

F.3d 1082, 1088 (11th Cir. 2001) (same);  *United States v. Chestaro*, 197 F.3d

600, 605 (2nd Cir. 1999) (same).[1]

Because of the requirement that an assault involving a threat must be

coupled with "apparent *present* ability" and "reasonable apprehension of

*immediate* bodily harm," it would not be possible to commit an assault with intent

to murder by—as the government argues—merely placing a person "in fear or

apprehension for his or her own safety (while also possessing the requisite specific

intent) in a manner which may not constitute a *substantial* step." G. Br. at 23; *see*

*Krochalis v. Insurance Co. of North America*, 629 F. Supp. 1360, 1370 (E.D. Pa.

1985) (words over the telephone alone cannot amount to an assault; the actor must

be capable of carrying out the threat immediately and must take some affirmative

action toward carrying out the threat).  Any act satisfying the immediacy

requirement for a non-touching assault, when combined with the specific intent to

murder, will necessarily constitute a substantial step toward committing a murder.

Thus, the offense of attempted murder "requires no proof beyond that which is

required for conviction of the greater" assault with intent to murder.  *Brown v.*

*Ohio*, 432 U.S. 161, 168 (1977).  Under *Blockburger v. United States*, 284 U.S.

---

[1]  The district court instructed the jury consistent with this definition of
assault. JA 407.

13

299 (1932), Bird's convictions and punishment for both attempted murder and assault with intent to commit murder violate the Double Jeopardy Clause.

## VI. Bird's Multiple Convictions for the Same Offense Violate Double Jeopardy, are Plain Error, and Should Be Vacated.

A.    The government argues that, even if the district court erroneously imposed judgment and sentence on both the assault with intent to commit murder and attempted murder charges, that error is not plain.  G. Br. 24.  But the absence of any law specifically "addressing the relationship between these two statutes," (G. Br. 24), does not mean that there is no settled and clearly contrary law addressing this issue.

In *United States v. Jarvis*, this Court addressed whether a defendant's claim that his prosecution violated double jeopardy was plain error where the defendant did not object during the proceedings below.  7 F.3d 404, 410 (4th Cir. 1993).  There, prosecutors had prosecuted and obtained conspiracy convictions against Jarvis in two different districts; the conspiracy alleged and proved in the first prosecution was completely subsumed in conspiracy proved in the second prosecution, violating the Double Jeopardy Clause.  *Id.* at 412.  The Court concluded that the error was plain simply because "it is abundantly 'clear under current law' that multiple prosecutions which run afoul of the Double Jeopardy Clause are constitutionally forbidden."  *Id.*  Thus, controlling authority need not

14

address the specific facts presented in this case to render the district court's error "plain." Under *Jarvis*, the error is plain because controlling law establishes that: (1) the Double Jeopardy Clause prohibits subjecting a defendant to separate sentences on two counts, when one count is a lesser included offense of the other, *United States v. Midgett*, 488 F.3d 288, 302 (4th Cir. 2007); and (2) the Double Jeopardy Clause bars cumulative punishment when one offense requires no proof beyond that necessary for the greater offense, *Brown v. Ohio*, 432 U.S. at 168-69.

B.       The government also argues that, "because the two sentences are to be served concurrently, no miscarriage of justice would result" if Bird's convictions and sentences are left intact, because "no broader issues of fairness or integrity are implicated." G. Br. 24. This is incorrect under the law of this Court and the Supreme Court. In *United States v. Olano*, the Supreme Court rejected the "miscarriage of justice" standard for determining whether a plain error should be noticed. 507 U.S. 725, 736 (1993). The correct inquiry is whether "a plain forfeited error affecting substantial rights. . . 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Atkinson*, 297 U.S. 157 (1936)). Here, the double jeopardy violation affects Bird's substantial rights, and failing to notice it would seriously affect the fairness, integrity and public reputation of judicial proceedings.

15

In *Ball v. United States*, the Supreme Court explained that it has consistently relied on the *Blockburger* double jeopardy test "to determine whether Congress intended the same conduct to be punishable under two criminal provisions," because "[t]he assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes." 470 U.S. at 862. And, when two United States statutes fail the *Blockburger* test, Congress does not intend to allow two convictions for the same conduct, because "Congress does not create criminal offenses having no sentencing component." *Id.* In *Ball*, the Court emphasized that, even if punishment for the second conviction is concurrent, the second conviction still "has potential adverse collateral consequences"—such as effects on release from prison, on punishment for future offenses, on the defendant's credibility in court, and on reputation—"that may not be ignored." *Id.* at 865. Furthermore, Supreme Court precedent establishes that, where a defendant is subject to a separate special assessment for each conviction as Bird was, JA 449, "a second conviction will amount to a second punishment." *Rutledge*, 517 U.S. at 301.

Under *Ball* and *Rutledge*, the only remedy consistent with congressional intent is for the district court to vacate one of the duplicative convictions. *Id.* at 301-02 (citing *Ball*, 470 U.S. at 864). *Ball* and *Rutledge* establish that Bird's cumulative convictions and punishments are contrary to Congressional intent, are

16

multiple punishments, are prejudicial, and do affect his substantial rights under the plain error test described in *Olano*. *See* 507 U.S. at 734.

Finally, *Jarvis* makes clear that a double jeopardy violation should be noticed, because it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 736. In *Jarvis*, this Court noticed plain error when the defendant's double jeopardy rights were violated, because the error "was a right of constitutional dimension," and "[t]he vindication of constitutional rights is among the most exalted callings of Article III courts." 7 F.3d at 413. The Court stated that it "cannot imagine a course more likely to 'seriously affect the fairness, integrity, or public reputation of judicial proceedings,'" than to permit a conviction to stand in violation of the Double Jeopardy Clause. *Id.*

This Court should notice the district court's plain, constitutional error in entering judgment and sentence against Bird in violation of the Double Jeopardy Clause.

# CONCLUSION

For the reasons stated in this Brief and in his Opening Brief, the Court should vacate Bird's convictions and remand his case to the district court for a new trial in which his post-polygraph statements to law enforcement officers are suppressed. Additionally and alternatively, the Court should vacate the judgment of conviction for the charge of attempted murder.

This, the 12th of March, 2010.

Claire J. Rauscher, Director
Federal Defenders of
Western North Carolina, Inc.

/s Ann L. Hester
*Ann L. Hester
Angela Parrott
Fredilyn Sison
Assistant Federal Defenders
129 W. Trade Street, Suite 300
Charlotte, NC 28202
(704) 374-0720
Counsel for Appellant
*Counsel of Record

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      32(a)(7)(B) because:

            this brief contains <u>3,857</u> words, excluding the parts of the brief
            exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
      because:

            this brief has been prepared in a proportional spaced typeface using
            <u>14 Point Times New Roman</u> in <u>WordPerfect 12</u>.

                                          <u>/s/ Ann L. Hester</u>
                                           Counsel for Appellant
                                           Dated: March 12, 2010

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on March 12, 2010, I electronically filed the foregoing

brief with the Clerk of Court using the CM/ECF System, which will send notice of

such filing to the following registered CM/ECF user:

     Donald D. Gast
     OFFICE OF THE U.S. ATTORNEY
     United States Courthouse
     100 Otis Street, Room 233
     Asheville, NC  28801
     (828) 271-4661

     *Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

              /s/ Tracy Moore Stuckey
              Tracy Moore Stuckey
              Gibson Moore Appellate Services, LLC
              421 East Franklin Street, Suite 230
              Richmond, VA  23219